IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBORAH J. KELLEY-HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:04-CV-1832-P |
| | § | |
| BISHOP GREGORY G.M. INGRAM, | § | |
| AND PAUL QUINN COLLEGE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Paul Quinn College's (hereinafter "Defendant") Motion for Summary Judgment, filed November 21, 2005. Plaintiff filed her response on December 12, 2005, and Defendant replied on December 27, 2005. For the reasons stated below, the Court hereby GRANTS Defendant's Motion.[1] Plaintiff's claims against Defendant are hereby DISMISSED WITH PREJUDICE.

**I. Background and Procedural History**

This employment discrimination case arises out of a dispute as to Defendant's decision to hire another candidate for the position of Director of Financial Aid rather than promote Plaintiff from her position as Director of Scholarships as well as its later decision to terminate Plaintiff's employment. Plaintiff claims that these employment decisions were made based on age in violation

---

[1] Plaintiff's Complaint asserts claims based on negligent hiring and promotion procedures and wrongful termination. (Complaint ¶ 4.) However, Plaintiff's summary judgment response concedes that "there is no cause of action for negligent hiring, promotion procedures and wrongful termination per se" and states that Plaintiff "does not seek to pursue these claims separate and apart from her age discrimination claims." (Pl.'s Resp. 1–2.)

of federal law, while Defendant maintains that it had legitimate, nondiscriminatory reasons for its decisions.

In 1992, Plaintiff began working as an Administrative Assistant to the President at Paul Quinn College. (Pl.'s App. 23.) In 1995, she accepted the position of Scholarship Coordinator in the office of Student Financial Aid and was eventually promoted to the position of Director of Scholarships. (*Id.*)

As an employee in the office of Student Financial Aid, Plaintiff was under the general supervision of the Vice President of Fiscal Affairs and Administrative Services, a position held currently and at all times relevant to this lawsuit by Joseph deLeon McDuffie (hereinafter "McDuffie"). (Def.'s App. 1: McDuffie Aff. ¶¶ 2, 3; Pl.'s App. 3: Kelley-Hill Aff. ¶ 3.) Plaintiff's direct supervisor was Khaleelah Ali (hereinafter "Ali"), the Financial Aid Director. (Def.'s App. 1: McDuffie Aff. ¶ 3; Pl.'s App. 3: Kelley-Hill Aff. ¶ 3.)

Plaintiff applied for promotion to the position of Financial Aid Director in 2002, but McDuffie selected Ali over her. (Def.'s App. 4: McDuffie Aff. ¶ 17; Pl.'s App. 5: Kelley-Hill Aff. ¶ 22.) McDuffie claims that Plaintiff was not qualified for the position and that Ali was the most qualified applicant. (*Id.*) He also states that he based his decision on his direct experience with Plaintiff and his awareness of Plaintiff's record of insubordination problems with past supervisors. (Def.'s App. 2, 4: McDuffie Aff. ¶¶ 4, 17.) Plaintiff, on the other hand, asserts that she was more qualified than Ali. (Pl.'s App. 5: Kelley-Hill Aff. ¶ 23.) She also maintains that McDuffie could not have been aware of her past insubordination problems because this information was not part of her personnel file. (Pl.'s App. 1–2: Kelley-Hill Aff. ¶ 5.) In addition, she claims that during a

discussion about her application for this position McDuffie asked her how old she was. (Pl.'s App. 5: Kelley-Hill Aff. ¶ 26.) She allegedly responded by asking him why he wanted to know, and he apparently had no response. (*Id.*)

At the time of this decision, Plaintiff was approximately 52 years old. (Pl.'s App. 1: Kelley-Hill Aff. ¶ 1.) The only evidence of Ali's age is Plaintiff's affidavit testimony that she "could not have been any older then [sic] 24 years of age . . ." along with the fact that she received her bachelor's degree in 2001. (Pl.'s App. 5: Kelley-Hill Aff. ¶ 24.) Prior to her employment at Paul Quinn, Ali served as an Enrollment Services Officer 1/Financial Aid Counselor in the Office of Financial Aid at North Carolina Agricultural and Technical State University. (Def.'s App. 67.)

Even after Ali was selected for the Financial Aid Director position, Kelley-Hill continued her work as Director of Scholarships until she was terminated at the end of October 2003. In large part, the dispute surrounding Plaintiff's termination stems from a disagreement as to her responsibilities in this position. Defendant claims that "[d]ecisions related to scholarship eligibility were the responsibility of the Scholarship Committee," and "Ms. Kelley-Hill's job was to carry out the directives of the Scholarship Committee, not to initiate, create, or make decisions relating to scholarship eligibility on her own or from the direction of any other employee . . . ." (Def.'s App. 2: McDuffie Aff. ¶ 6.) Plaintiff, on the other hand, alleges that she played a central role in the scholarship program:

> Both before and during Mr. McDuffie's tenure, submissions were made to me by various department heads of those individuals they wanted to offer scholarships and their qualifications. I would then review them and determine if they were in fact qualified. I would then submit those I was recommending to the Scholarship Committee for approval. Cancellation of scholarships occurred in a slightly different

> manner. A department head would notify me if a student was no longer qualified to receive a previously approved scholarship and I would then cancel the scholarship.

(Pl.'s App. 2: Kelley-Hill Aff. ¶ 8.) In addition, Plaintiff maintains that she "was never informed by anyone in writing or verbally that I was not to determine who was eligible or ineligible for scholarships." (Pl.'s App. 2: Kelley-Hill Aff. ¶ 7.)

McDuffie allegedly became concerned about Plaintiff's application of his guidelines and directions in regards to the scholarship programs in the Spring and Summer of 2003. (Def.'s App. 2: McDuffie Aff. ¶ 5.) In the Fall, McDuffie sought Plaintiff's help in compiling a spreadsheet containing information regarding the students who were receiving scholarships. (Def.'s App. 2: McDuffie Aff. ¶ 7; Pl.'s App. 4: Kelley-Hill Aff. ¶ 6.) During this process, Plaintiff copied him on a series of emails she sent regarding choir scholarships. On Wednesday, September 17, 2003, Plaintiff sent an email to Jowanda Jordan, which read:

> Once I receive signed copies of the choir scholarship agreement I will begin awarding scholarships. After reviewing your list of students your total came up to $65,675.00 please keep in mind your budget is $40,000.00 with a remaining balance of $25,000.00 as of today.

(Def.'s App. 18.) A few minutes after this first email, Plaintiff copied McDuffie on a second email to Ms. Jordan, which read:

> Once I receive information I will forwarded [sic] the list of students to the Financial Aid Staff to VOID and return a total of $65,675.00 in loan money. Need information ASAP so that loan money can be returned.

(*Id.*) The next day, McDuffie responded to Plaintiff's email as follows:

> No loan money is to be cancelled and sent back before I review the final scholarship schedule. Attached is a spreadsheet to be used to reflect PRELIMINARY scholarship awards.

(*Id.*)

On October 9, 2003, Plaintiff sent an email to an address list entitled "Financial Aid," stating that she would "complete awarding scholarships for 2003-04 once [she] met with Mr. McDuffie." (*Id.* at 20.) On October 22, she sent an email to Ali that read:

> Completed awarding all Institutional Scholarships today, please see Mr. Mcduffie [sic] before returning any loan money.

(*Id.* at 19.)

On October 27, Plaintiff sent an email to the college's football coach, Archie Cooley (hereinafter "Cooley"), which read:

> In keeping with the football approval budget of $115,000 for academic year 2003-04 list of student in inter office to your office [sic]. However, the list of name [sic] you submitted was over $211,000.00 please keep in mind I can only award the approval budget.

(*Id.* at 21.)

Defendant claims that McDuffie requested a meeting with Plaintiff on October 28, 2003, to discuss his ongoing concerns. (Def.'s App. 3: McDuffie Aff. ¶ 10.) Defendant alleges that Cooley was present at this meeting and that McDuffie told Plaintiff to take no further action on scholarships without his approval. (*Id.*) However, Plaintiff denies both of these claims. (Pl.'s App. 4: Kelley-Hill Aff. ¶ 16.) While Plaintiff admits that she was told to take no further action regarding the *awarding* of scholarships, she denies being told to refrain from *canceling* scholarships. (*Id.*)

Following this meeting, McDuffie responded to Plaintiff's prior email to Cooley by stating:

1. You have provided to me the spreadsheet I requested.
2. I have not had time to complete my analysis.
3. On more than one occasion I have told you this; and informed you that I would get back with you on the final amounts.

> 4. I further explained to you, from a prior notice that you sent to Coach Cooley, that I would get back with you on this matter.
> 5. To date, I have not gotten back with you; and there's no reason for you to approach Coach Cooley with this any further–which I also said to you repeatedly.
>
> Please explain to me your further inquiry of him.
>
> In the meantime, you can't go any further until I'm done with what I'm doing.

(Def.'s App. 21.)

On October 30–31, 2003, Plaintiff sent a series of emails canceling a number of scholarships at the request of various department heads. (Def.'s App. 22–24.) Unknown to Plaintiff, one of the canceled scholarships was for a track athlete who had lodged a sexual harassment complaint against the track coach. (Def.'s App. 3; McDuffie Aff. ¶ 14; Pl.'s App. 4: Kelley-Hill Aff. ¶ 14.)

On October 31, 2003, McDuffie terminated Plaintiff and issued a termination letter which read in part:

> Effective immediately, your services to Paul Quinn College are no longer required as a result of your continued refusal to comply with specific directives from both your immediate supervisor and from me.

(Def.'s App. 4, 27: McDuffie Aff. ¶ 15.)

After Plaintiff was terminated, she filed an unemployment claim against the college. (Def.'s App. 28–37.) In a decision dated June 7, 2005, the Texas Workforce Commission, having heard firsthand testimony, concluded that "the weight of the evidence in this case establishes that claimant was discharged for misconduct connected with [her] work." (*Id.* at 34.)

Plaintiff filed a complaint with the EEOC and was issued a Notice of Rights to Sue on May 25, 2004. She filed her complaint in this Court on August 23, 2004, and an amended complaint on September 9, 2004. Defendant answered on October 4, 2004. The Court dismissed the claims

against Bishop Gregory G.M. Ingram on April 26, 2005. The parties have completed discovery, and Defendant now moves for summary judgment on all claims.

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323. However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). In addition, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). At this point, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248–50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation, and unsubstantiated assertions will

not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III. Analysis

Plaintiff raises two separate age discrimination claims against Defendant, one based on failure to promote and the other based on wrongful termination. The Court examines each claim below, finding that summary judgment is appropriate as to both claims.

#### A. Termination in Violation of the ADEA

The ADEA makes it unlawful for an employer to discriminate against an employee because of the individual's age. 29 U.S.C.A. § 623(a)(1) (West 1999). Discrimination cases based on circumstantial evidence, like Plaintiff's, are subject to the *McDonnell Douglas* burden-shifting test. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349–50 (5th Cir. 2005); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). To establish a prima facie case under the *McDonnell Douglas* test, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for her position; and (3) she suffered an adverse employment action. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). In the case of age-based discrimination, she must also prove that she was replaced by someone outside of the protected class,

replaced by someone younger, or otherwise discharged because of her age. *Machinchick*, 398 F.3d at 349–50.

The prima facie case, once established, raises a presumption of discrimination which the defendant must rebut by articulating legitimate, nondiscriminatory reasons for its actions. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the employer carries its burden, the presumption of discrimination created by the prima facie case drops out of the picture, and the plaintiff must prove that the proffered reasons are pretextual. *Id*.

To demonstrate pretext, Plaintiff must present evidence to rebut each of the non-discriminatory reasons that Defendant articulates. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). If "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citation omitted); *see Reeves*, 530 U.S. at 143, 148.[2] This is because a plaintiff's prima facie case, along with sufficient evidence that the employer's proffered reason is false, may permit a factfinder to infer that the employer intentionally discriminated. *Reeves*, 530 U.S. at 148.

Such a showing will not prevent summary judgment in every case, however, because in some cases "although [a] plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was

---

[2] "Although *Reeves* was based on a motion for judgment as a matter of law, the standard is the same for summary judgment." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 n.1 (5th Cir. 2002) (citation omitted).

discriminatory." *Id.*; *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The fact "that the employer's proffered reason is unpersuasive . . . does not necessarily establish that the plaintiff's proffered reason is correct." *Hicks*, 509 U.S. at 524. To find in favor of the plaintiff, it "is not enough [for the factfinder] . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519 (emphasis in original). The ultimate burden of persuasion rests squarely on the plaintiff. *Reeves*, 530 U.S. at 143. As such, courts may consider a number of factors in deciding whether summary judgment is appropriate, including "the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Id.* at 148–49. Summary judgment may be particularly appropriate where "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred" *or* where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." *Id.* at 148.

Here, Defendant's Motion does not dispute that Plaintiff has established a prima facie case.[3] As such, the burden is on Defendant to articulate a legitimate non-discriminatory reason for her termination. Defendant claims that it terminated Plaintiff due to "her refusal to obey directives concerning not taking any action with respect to scholarships." (Def.'s Brief Support Mot. 9.) "The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action." *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir.

---

[3] Defendant's Reply Brief argues that Plaintiff has failed to establish a prima facie case because she has not shown that she was replaced by someone outside the protected class. (Def.'s Reply 3–4.) However, the Court will not consider this argument when determining whether to grant summary judgment because it was raised for the first time in the reply brief. *See SEC v. Kornman*, 391 F. Supp. 2d 477, 485 (N.D. Tex. 2005) (Lindsay, J.).

2001). Defendant claims that McDuffie ordered Plaintiff to take no further action relating to scholarships at a meeting on October 28, 2003, and that his followup email clarified this order. (Def.'s Brief Support Mot. 6–7.) According to Defendant, Plaintiff was terminated after she violated this order by canceling several scholarships at the request of various department heads. (*Id.* at 7.) Defendant notes that her cancellation of the track scholarship "potentially created a great problem for the College." (*Id.*) As noted above, the cancelled scholarship was for a "female student who had lodged a sexual harassment complaint against the track coach." (*Id.*) As a result, "the cancellation could have been regarded as retaliation by the student and subjected the College to charges in this regard." (*Id.*) An employer's fear that an employee's action exposed it to substantial legal risk is also a legitimate, nondiscriminatory reason to discharge the employee. *Sandstad v. CB Richard Ellis, Inc.*, No. 3-99-CV2352-P, 2001 U.S. Dist. LEXIS 7513, at *19–20 (N.D. Tex. June 4, 2001). In short, the Court finds that Defendant has articulated a legitimate, nondiscriminatory reason for terminating the plaintiff, namely McDuffie's belief that she had violated his order to refrain from cancelling scholarships and in doing so potentially exposed the defendant to great liability. As a result, the burden shifts back to Plaintiff to provide substantial evidence of pretext.

Plaintiff attempts to show pretext by claiming that canceling scholarships was part of her job and that she was never ordered to refrain from performing this task. (Pl.'s Resp. 12–13.) In her affidavit, Plaintiff testifies that the standard procedure for cancelling scholarships was for department heads to notify her of the cancellation and then for her to process it. (Pl.'s App. 2: Kelley-Hill Aff. ¶ 8.) She states that she followed standard protocol when she cancelled the scholarships on October 30–31. (Pl.'s App. 4: Kelley-Hill Aff. ¶¶ 17, 18–20.) Furthermore, she

disputes Defendant's allegations regarding the meeting on October 28, 2003, and the followup email. Contrary to the testimony of McDuffie and Cooley, Plaintiff claims that Cooley was not at this meeting. (Pl.'s App. 4: Kelley-Hill Aff. ¶ 16.) In addition, she disputes their testimony regarding what she was told at the meeting. Plaintiff admits that she was told to take no further action regarding approval of scholarships, but maintains that McDuffie's instructions did not apply to cancellation of scholarships at the request of a department head. (*Id.*)

Even if true, this evidence fails to establish pretext. "The issue at the pretext stage is whether [the employer's] reason, even if incorrect, was the real reason for [the employee's] termination." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Plaintiff's summary judgment evidence merely shows that in her opinion McDuffie's instructions did not apply to the cancellation of scholarships. For purposes of the pretext inquiry, however, the pivotal question is whether McDuffie fired her because he believed that she disobeyed his order and thereby potentially exposed the college to significant liability, regardless of whether his belief was correct or incorrect. The summary judgment record strongly suggests that McDuffie fired her because he thought that she had disobeyed his order and potentially exposed the college to liability. (Def.'s App. 2–3: McDuffie Aff. ¶¶ 5–13; Def.'s App. 38: Cooley Aff. ¶¶ 3–4; Def.'s App. 40–41: Downing Aff. ¶¶ 5–6; Def.'s App. 27.) Plaintiff has failed to offer sufficient evidence on this point to create a fact issue and therefore fails to establish pretext.

Because Plaintiff has failed to establish the existence of a fact issue for trial, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's claim based on wrongful termination in violation of the ADEA.

## B. Failure to Promote in Violation of the ADEA

Plaintiff also claims that Defendant violated the ADEA when it decided to hire another candidate for the position of Director of Financial Aid rather than promote Plaintiff from her position as Director of Scholarships.[4] In order to state a prima facie case for failure to promote, the plaintiff "must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position for which she applied; (3) she was not hired for the position that she sought; and (4) the employer persisted in interviewing and hiring applicants with qualifications comparable to those possessed by [the plaintiff]." *Jenkins v. Ball Corp.*, 140 Fed. App'x 519, 524 (5th Cir. 2005). In this case, the parties do not dispute the fact that Plaintiff has established a prima facie case. Instead, the issue here is whether Defendant's proffered reason for its decision was its true rationale.

Defendant claims that McDuffie chose Ali for the position because he thought she was better qualified and because of problems he had with Plaintiff's actions and qualifications. (Def.'s App. 2, 4: McDuffie Aff. ¶¶ 4, 17.) Defendant has thus articulated a legitimate, nondiscriminatory reason for its employment decision, and as a result the burden shifts to Plaintiff to show that the proffered reason is pretextual.

"A plaintiff may raise a fact question about pretext by presenting evidence that she is 'clearly better qualified' than the employee selected for the position in dispute." *Sanders v. Anadarko Petroleum Corp.*, 108 Fed. App'x 139, 143 (5th Cir. 2004). "To establish a fact question as to

---

[4] The Court notes that Plaintiff's failure to promote claim is arguably time-barred because it was not filed within 300 days of the alleged unlawful practice as required by 29 U.S.C.A. § 626(d)(2); *see also Tyler v. Union Oil Co.*, 304 F.3d 379, 384 (5th Cir. 2002). However, "[f]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Moore v. Baylor Health Care Sys.*, No. 3-CV-03-2354-P, 2004 U.S. Dist. LEXIS 7009, at *6–7 (N.D. Tex. Apr. 23, 2004). Here, Defendant did not raise this argument in its answer or motion for summary judgment, and therefore it is waived.

relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).

Here, Plaintiff argues that "[t]here was no comparison between Plaintiff's qualifications and Ms. Ali's qualifications at the time." (Pl.'s Resp. 11.) Plaintiff alleges that Ali's experience at the time consisted of "a little over a year in a Financial Aid office as a mentee student, office assistant, or financial aid counselor, whereas Plaintiff had worked her way up over many years from the position of Financial Aid Counselor to Assistant Director of Scholarships and Recruitment, to Director of Scholarships . . . ." (*Id.*)

Having compared the two resumes, the Court finds that Plaintiff was not clearly better qualified. Plaintiff places great reliance on the fact that she had more years of experience at the time of the decision. However, the Fifth Circuit regards an "attempt to equate years served with superior qualifications . . . as unpersuasive." *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 959 (5th Cir. 1993). "[W]ork experience is one component of defining who is more 'qualified.'" *Nichols*, 81 F.3d at 42. "However, *Bodenheimer* mandates that greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." *Id.* In addition, while recognizing that Plaintiff had significantly more experience than Ali, the Court notes that Plaintiff greatly understates Ali's experience with financial aid work before coming to Paul Quinn College. Plaintiff states that Ali had "little over a year" in experience, when in fact she had closer to four. (Def.'s App. 67.) Furthermore, Ali's resume suggests that she had considerably more expertise with information systems than Plaintiff. At the time she was hired, she was in the process of obtaining

her Masters in Management Information Systems and had completed course work in JAVA Script, XML & HTML Programming, E-Commerce & E-Business Fundamentals, and MIS Projects. (*Id.*) Plaintiff's resume does not suggest a similar level of skill with information technology. In addition, Ali's resume indicates that she had received numerous honors, including graduating Magna Cum Laude, being on the Dean's List, and receiving numerous scholarships and fellowships, whereas Plaintiff's resume does not indicate that she received comparable honors. (*Id.*) In short, a comparison of the resumes does not establish that Plaintiff was clearly better qualified.

Plaintiff also disputes Defendant's assertion that past performance issues factored into the decision. Plaintiff has failed to establish a fact issue on this point. Plaintiff's personnel file contains significant negative information regarding past job performance. A memorandum dated August 19, 1997, states that she "has repeatedly and continuously performed her assigned duties in an unacceptable manner since April, 1997" and chronicles a number of performance deficiencies that formed the basis for this statement. (Def.'s App. 44–47.) A memorandum dated February 2, 1998, complains of insubordination and lists a number of such events. (*Id.* at 48–50.) A performance review dated January 31, 2000, rates her performance in 39 different categories. (*Id.* at 60–65.) In that review, she failed to achieve expectations in 6 categories, partially achieved expectations in 19 categories, achieved expectations in 12, and exceeded expectations in 2. (*Id.*)

Plaintiff alleges that McDuffie could not have been aware of these deficiencies because she allegedly inspected her personnel file during her employment and did not see these records. (Pl.'s App. 1–2: Kelley-Hill Aff. ¶ 5.) However, the fact that she does not remember seeing such information in the file does not necessarily mean that it was not there. In fact, other evidence

submitted by her suggests that it was. Plaintiff submits a letter from Ricky Eddie, her former supervisor, stating that a "letter of insubordination and verbal warning *was placed* in error in her personnel file." (Pl.'s App. 92.) (emphasis added).

Plaintiff also alleges that the performance report dated January 31, 2000, is fraudulent. She fails, however, to offer substantial evidence to create a fact issue as to the validity of this report. The only evidence she offers in support of this claim is an undated and unsigned performance report with significantly higher ratings. (Pl.'s App. 26–29.) Even if Plaintiff's proffered report is genuine, which the Court has reason to doubt,[5] nothing on the report links it to the review period ending on January 31, 2000. In the absence of a date or some other indication that these two documents purport to cover the same review period, there is no reasonable inference to be made that one of them is fraudulent.

Finally, Plaintiff seeks to establish pretext by offering evidence that McDuffie inquired about her age during a discussion about the possible promotion. (Pl.'s App. 5: Kelley-Hill Aff. ¶ 26.) Even if true, the record strongly supports Defendant's claim that it believed Plaintiff was not qualified for the position and that Ali was the most qualified applicant. As a result, the Court finds that Plaintiff's self-interested testimony regarding McDuffie's question does not create a fact issue as to whether Defendant's proffered reason is false.

---

[5] As noted, the report contains no date and is signed only by the Plaintiff. Also, the ratings are remarkably high. Plaintiff is rated as exceeds expectations in 41 out of 45 categories and achieves expectations in the remaining 4. Unlike the January 31, 2000, report, Plaintiff's report is completely typed and the only handwriting on it is Plaintiff's signature. Also, whereas the January 31, 2000, report contains blank lines for the reviewer to write on, these lines are mysteriously missing on Plaintiff's report. Furthermore, there are some unexplained blemishes on Plaintiff's report which appear remarkably similar to the sort of marks that are left when text is sloppily white out and the document is then copied.

**Memorandum Opinion and Order**
**No. 3:04-CV-1832-P**
**Page 16 of 17**

In conclusion, Plaintiff has failed to provide substantial evidence casting doubt on the employer's proffered reason for hiring Ali over her. She has thus failed to establish a genuine issue of material fact as to her failure to promote claim, and therefore summary judgment will be granted.

## Conclusion

For the reasons stated above, the Court hereby GRANTS Defendant's Motion for Summary Judgment.  Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

**It is so ordered.**

Signed this 15th day of August 2006.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE